UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES LENNANE, et al., | No. 2:13-cv-02311-JAM-AC |
| Plaintiffs, | |
| v. | ORDER |
| AMERICAN ZURICH INSURANCE COMPANY, | |
| Defendant. | |

Plaintiffs James Lennane and JC Produce, LLC bring suit against Defendant American Zurich Insurance Company for breach of contract, breach of the implied covenant of good faith and fair dealing, unfair business practices in violation of California Business and Professions Code § 17200, and conversion. This matter is on for defendant's motion for sanctions. ECF No. 19. Defendant requests that the court disqualify plaintiffs' only expert witness because plaintiffs have failed to submit a timely expert report.

FACTUAL AND PROCEDURAL BACKGROUND

On April 1, 2006, Plaintiff JCP purchased a workers' compensation insurance policy ("the Policy") from Defendant. Under the Policy, Defendant agreed to pay the benefits required of Plaintiff JCP by the California workers' compensation laws. The Policy required Plaintiff JCP to reimburse Defendant for each claim, up to the deductible amount of $250,000. Plaintiff JCP collateralized its deductible by providing Defendant with a $25,000 "loss fund" and two standby letters of credit, in the aggregate

amount of $780,000 (the "Standby Letters"). Bank of the West (the "Bank") issued the required Standby Letters to Defendant. The Bank required Plaintiff Lennane to personally guarantee repayment of the Standby Letters, in the event that Plaintiff JCP failed to repay the Bank.

At some point in 2006, the Bank declined to renew the Standby Letters, which were set to expire. In approximately December 2006, Defendant "exercised its rights under the . . . Policy to present to Bank the [Standby Letters] for payment, and monetized the amount of $780,000." Consequently, Defendant had possession of $805,000, which it allegedly held "in trust" for Plaintiffs' benefit. Plaintiff Lennane subsequently reimbursed the Bank for its funding of the Standby Letters. In October 2008, Plaintiff JCP's business failed.

Previously, in October 2006, Hugo Arreola ("Arreola") filed a claim under the California workers' compensation laws against Plaintiff JCP. This claim was subject to the Policy, as Arreola claimed to have suffered an injury while working for Plaintiff JCP. Defendant paid "significant sums of money" to Arreola and his health care providers, under the Policy, until August 2010. Between October 2006 and December 2006, Defendant billed Plaintiff JCP under the deductible provision of the Policy for Arreola's claim. After Defendant monetized the Standby Letters in December 2006, Defendant continued to make payments to Arreola from the $805,000 fund held by Defendant.

In June 2010, Plaintiff Lennane obtained records that suggested Arreola had concealed a prior injury which would have impacted his workers' compensation claim. Plaintiff Lennane shared the information with Defendant, which then proceeded to investigate Arreola's claim. Defendant had allegedly failed to conduct a proper investigation at the time of Arreola's original claim. On September 20, 2010, Defendant "shared with Plaintiffs, for the first time, that they had obtained sufficient information to believe Arreola was a fraudster."

ECF No. 15 at 2–4 (citations to plaintiffs' state court complaint omitted).

On September 18, 2013, plaintiffs filed a complaint in California Superior Court, Sacramento County. ECF No. 1-2 at 2–14. On November 6, 2013, defendant removed the action to this court. ECF No. 1. On January 9, 2014, the court issued a pretrial scheduling order. ECF No. 12. That scheduling order required that expert witness disclosures be made by December 5, 2014. Id. at 3. The order further states that

Failure of a party to comply with the disclosure schedule as set forth above in all likelihood will preclude that party from calling the expert witness at the time of trial absent a showing that the necessity for the witness could not have been reasonably anticipated

2

> at the time the disclosures were ordered and that the failure to make timely disclosure did not prejudice any other party. See Fed. R. Civ. P. 37(c).

Id. The scheduling order also required that all discovery be complete by February 6, 2015, and all dispositive motions be filed by April 18, 2015. Id. at 2, 3. The order also schedules the final pre-trial conference for June 12, 2015, and the trial for July 20, 2015. Id. at 4, 5.

On February 10, 2014, the court dismissed three of plaintiffs' causes of action without leave to amend, leaving breach of contract, breach of the implied covenant of good faith and fair dealing, unfair business practices in violation of California Business and Professions Code § 17200, and conversion as the remaining causes of action. ECF No. 15. On December 5, 2014, defendant served plaintiffs with its disclosure of expert witnesses and expert witness reports. ECF No. 19 at 2. On the same day plaintiffs served defendant with their own disclosure of expert witnesses, but neglected to provide expert witness reports. ECF No. 19 at Ex. A. Plaintiffs' expert witness designation included two individuals, "Malcom Morgan, CPA" and "Eric E. Frye, Esq." Id.

On January 27, 2015, defendant filed the instant motion for sanctions, requesting that the court disqualify plaintiffs' expert witness for failure to produce a timely expert report. ECF No. 19 at 1. Defendant argues that plaintiffs' experts should be stricken because by failing to file expert reports alongside their expert witness disclosures plaintiffs have violated both Rule 37 and the court's scheduling order. Id. at 4–5. On January 30, 2015, plaintiffs filed an opposition arguing that defendant's motion for sanctions should be denied for failure to comply with Local Rule 230. ECF No. 21. On February 6, 2015, the court directed plaintiffs to respond to defendant's motion in accordance with Local Rule 251(e), not Local Rule 230, and continued the hearing set for defendant's motion. ECF No. 24.

On February 11, 2015, plaintiffs filed an opposition conceding that they failed to produce timely expert reports in violation of Federal Rule 37 and the court's scheduling order. ECF No. 26 at 8. According to plaintiffs, they failed to timely produce these expert reports because of a computer error that erased all reminders of upcoming deadlines for this case. Id. at 7. Plaintiffs' opposition argues that its failure was (1) substantially justified in light of the unavoidable and

1   unexpected computer error that caused it, and (2) harmless because this matter is not set for trial
2   until July 20, 2015, leaving the parties plenty of time to rectify the mistake. Id. at 9–12.
3   Plaintiffs' opposition also withdraws Malcom Morgan as a designated expert in this matter. Id. at
4   7.
5         On February 13, 2015, defendant filed a reply to plaintiffs' opposition. ECF No. 27.
6   Defendant argues that plaintiffs have not established their failure was either substantially justified
7   or harmless. Id. at 4–5. Defendant argues that plaintiffs failure is not substantially justified based
8   on the fact that (1) plaintiffs' counsel was aware his office was having computer problems long
9   before the deadline; (2) plaintiffs' counsel actually had the expert disclosure deadline listed in his
10  phone while these computer issues were occurring; and (3) the real cause of plaintiffs' failure to
11  supply any expert report whatsoever by the deadline was counsel's failure to engage in timely
12  discovery. Id. at 11–13.
13        Defendant also argues that the harm it has suffered is actually exacerbated by plaintiffs'
14  recently provided expert report, which relies upon completely new allegations. Id. Defendant
15  argues that plaintiffs' original complaint alleged defendant should have rejected Arreola's
16  worker's compensation claim because his injuries occurred outside of the scope of his
17  employment. Id. at 4–8. In an abrupt about face, plaintiffs' expert report now claims that it is not
18  disputed Arreola received his injury within the scope of his employment. Id. Rather, plaintiffs
19  allege that defendant failed to investigate properly into the extent of his injuries. Id. According
20  to defendant the discovery it has done so far, based on plaintiffs' original complaint, is
21  insufficient to rebut these completely new allegations. Id. at 9–10.

22                                    LEGAL STANDARDS
23  I.      Motion for Sanctions
24        Rule 26(a) (2)(B) provides that "unless stipulated or ordered by the court [the disclosure
25  of the identity of expert witnesses pursuant to Rule 26(a)(2)(A)] must be accompanied by a
26  written report. Fed. R. Civ. P. 26(a)(2)(B). The report shall contain, among other things, a
27  "complete statement of all opinions to be expressed and the basis and reasons for them" and the
28  data or other information considered by the witness in forming the opinions. Fed. R. Civ. P.

26(a)(2)(B). A party who fails to properly disclose its experts and their reports may be barred from using any of the expert's direct testimony unless there was "substantial justification" for the failure to disclose or the failure was "harmless." Fed. R. Civ. Proc. 37(c)(1).

In determining whether this action should be imposed, the burden is on the party facing the sanction to prove harmlessness. Torres v. City of Los Angeles, 548 F.3d 1197 (9th Cir. 2008) (quoting Yeti by Molly Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1107 (9th Cir. 2001)). The Ninth Circuit Court of Appeals gives wide latitude to a district court's exercise of discretion to issue sanctions for failure to disclose an expert. Yeti, 259 F.3d at 1106. Exclusionary sanctions based on discovery violations are generally improper absent undue prejudice to the opposing side. Amersham Pharmacia Biotech, Inc., v. Perkin, 190 F.R.D. 644, 648–49. (N.D. Cal. 2000).

Some courts have held that when considering whether to exclude the expert testimony, the court should examine: (1) the explanation, if any, for the failure to disclose; (2) prejudice to the opposing party; (3) the potential for curing the breach by granting a continuance; and (4) the importance of the testimony. See Barett v. Atlantic Richfield Co., 95 F.3d 375, 380 (5th Cir. 1996); Sierra Club Lone Star Chapter v. Cedar Point Oil Co., Inc., 73 F.3d 546, 572 (5th Cir. 1996); cert. denied, 519 U.S. 811 (1996).

## DISCUSSION

The court finds that plaintiffs have not met their burden of establishing that their failure to provide a timely expert report was either substantially justified or entirely harmless. Nevertheless, in light of the harshness of the remedy sought in comparison to the minimal prejudice to defendant, the court will grant defendant's motion for sanctions in part only. Instead of disqualifying plaintiffs' only expert witness, the court will require that plaintiffs' counsel pay the costs of any deposition required and all reasonable attorneys' fees incurred because of his failure to provide a timely expert report.

1.  Substantial Justification

Plaintiffs' failure to file a timely expert report was not substantially justified because counsel was on notice that computer errors had been occurring in his office and failed to

5

1  manually track compliance with the court's scheduling order.  Plaintiffs' counsel alleges that he
2  first discovered his office was having calendaring issues in September 2014.  ECF No. 26 at 6.
3  Shortly thereafter, counsel hired Fastbreak Tech, Inc. ("Fastbreak") to resolve this issue.  Id.
4  After Fastbreak finished repairing counsel's network, he believed his calendaring system was
5  operating normally.  Id.  He learned that, in fact, his calendaring system had begun dropping
6  notices for deadlines in this case when he returned to his office from another trial on December 5,
7  2014, the day expert disclosures were due.  Id. at 7.

8  This kind of inadvertent failure to monitor compliance with the court's scheduling order
9  does not constitute a substantial justification.  Counsel has a duty to consult the court's
10  scheduling order and adhere to it accordingly.  See Johnson v. Mammoth Recreations, Inc., 975 F.
11  2d 604, 610 (9th Cir. 1992) ("A scheduling order is not a frivolous piece of paper, idly entered,
12  which can be cavalierly disregarded by counsel without peril." (citation omitted)).  What is more,
13  plaintiffs could have requested an extension of the scheduling order's deadlines at any time in an
14  effort to bring litigation back on schedule.  See Quevedo v. Trans-Pac. Shipping, Inc., 143 F.3d
15  1255, 1258 (9th Cir. 1998) (noting that the plaintiff could have requested an extension of the
16  district court's deadlines).  Instead, they simply disregarded the scheduling order and waited for
17  defendant to file a motion for sanctions.

18  Although plaintiffs' explanation does not make their failure to check the upcoming
19  deadlines in this case substantially justified, defendant offers no evidence that plaintiffs failed to
20  provide a timely expert report in bad faith.  In fact, the affidavits from Fastbreak attached to
21  plaintiffs' opposition establish that counsel did attempt to resolve his computer issues, and had
22  good reason to believe they were fixed.  ECF No. 26-1.  Those affidavits also include invoices
23  from Fastbreak assuring counsel that its network should be fully operational.  Id.

24  2.     Harmlessness

25  Plaintiffs' failure to produce a timely expert report was also not harmless.  Plaintiffs argue
26  that the discovery schedule allows the parties ample time before trial to engage in the necessary
27  discovery, even with the delay caused by their late expert report.  However, "[d]isruption to the
28  schedule of the court and other parties . . . is not harmless."  Wong v. Regents of Univ. of

1  California, 410 F.3d 1052, 1062 (9th Cir. 2005).  Further, although it is true that the trial is not
2  scheduled until July 20, 2015, other deadlines are far closer.  The parties' deadline to file
3  dispositive motions, for example, is April 18, 2015.
4        Nevertheless, defendant is unlikely to suffer substantial prejudice because of this delay.
5  Plaintiffs provided their expert report approximately two months late.  See ECF No. 27 at 4
6  (stating that plaintiffs recently provided Frye's expert report).  While two months is not a trivial
7  amount of time, the prejudice suffered by defendant will be substantially mitigated by an
8  extension of the court's current deadlines.  The court will reopen discovery for the limited
9  purpose of permitting any additional depositions made necessary by the late-disclosed expert
10 report, and will reset the parties' other deadlines accordingly.
11       Further, defendant argues unconvincingly that it has been prejudiced in a number of other
12 ways by the untimeliness of plaintiffs' expert report.  For example, defendant argues that it has
13 been harmed because it did not have plaintiffs' expert report when it (1) deposed both plaintiffs;
14 (2) produced its percipient witnesses for deposition; and (3) produced its own experts for
15 deposition. ECF No. 19 at 1.  However, defendant points to no authority supporting the
16 proposition that expert reports must be produced before depositions of parties and percipient
17 witnesses.  The court's scheduling order certainly does not include such a mandate.  In addition,
18 although plaintiffs should have produced their expert's report by the time it deposed defendant's
19 experts, it is not clear how defendant believes it was prejudiced by not having those reports.
20       Defendant also claims that it has been prejudiced by the content of Frye's expert report,
21 which allegedly re-focuses the scope of plaintiffs' claims in a way not previously contemplated
22 by either party. ECF No. 27 at 4.  According to defendant, Frye's expert report changes
23 plaintiffs' theory of liability. Id.  Although plaintiffs previously alleged that Arreola's injuries
24 were not sustained within the scope of his employment at all, they now apparently concede that
25 point. Id. at 5, 7.  Instead, plaintiffs are now alleging that Arreola lied about the extent of his
26 injuries. Id. at 8.  Defendant claims that had it known plaintiffs were going to embark upon this
27 theory of liability, it would have altered its discovery plan significantly. Id. at 9–10.  Because the
28 discovery period has already ended, defendant alleges that it is prejudiced in being unable to

1 engage in that discovery. Id.

2 　　　　Evaluation of this argument requires a summary of plaintiffs' complaint and the recently
3 filed expert report. The complaint alleges that defendant mishandled the investigation of
4 Arreola's worker's compensation claim. Specifically, plaintiffs allege that defendant failed to
5 properly investigate Arreola's claim despite the existence of facts indicating that his claim might
6 be fraudulent. ECF No. 1-2 at 5. For example, when asked by defendant whether he ever had
7 problems breathing or bleeding from his nose before, Arreola replied that he had not, even though
8 he filed a claim in 1991 covering his hands, nose, and psyche. Id. When plaintiffs learned that
9 Arreola had filed this claim, they alerted defendant. Id. Apparently, when defendant confronted
10 Arreola's attorney with this information the attorney told defendant that the previous claim had
11 been filed fraudulently by someone else in Arreola's name. Id. Plaintiffs allege that if defendant
12 had investigated the previous claim as it was obligated to do, it would have discovered that the
13 claim had indeed been filed by Arreola, and subsequently denied his pending claim as fraudulent.
14 Id.

15 　　　　Frye's expert report states that Arreola's original claim was a facially valid "no loss time
16 first aid" claim based on a work incident that caused an abrasion to his nose. ECF No. 26-2 at 33.
17 The scope of Arreola's claim apparently expanded dramatically upon the submission of his
18 doctor's report, which alleged injuries to numerous body parts not included in his original claim.
19 Id. Once Arreola had submitted his doctor's report, his claim morphed from a request that
20 included no loss of time into a request for a year of temporary disability. Id. Plaintiff alleges
21 that defendant failed to properly investigate the amended claim in light of its dramatically
22 expanded scope. Id. at 33, 35. While Frye's report points to a number of alleged failings in the
23 investigatory process, the one that appears most prominently in plaintiffs' complaint is
24 defendant's failure to timely "index" Arreola's amended claim.[1] Id. at 35; ECF No. 1-2 at 5.
25 Plaintiffs allege that had defendant timely indexed Arreola's amended claim, it would have found
26 that he had filed a number of worker's compensation claims in the past, including one that

---

[1] Indexing is a process used to determine whether a claimant has made workers compensation claims prior to the pending one. ECF No. 26-2 at 35.

1    involved injury to his nose.  ECF No. 26-2 at 35–36.  Had defendant realized this earlier, it would

2    have been able to timely reject Arreola's claim (or at least parts of it) once an investigation

3    established that it was fraudulent.  Id.

4         The court finds that Frye's report cannot be fairly read to raise new allegations or

5    introduce a new theory not contemplated by plaintiffs' complaint.  There is nothing in plaintiffs'

6    complaint that suggests they meant to challenge defendant's investigation based solely on the

7    contention that Arreola's injury occurred outside of the scope of his employment.  Defendant's

8    citations to plaintiffs' complaint do not demonstrate otherwise.  See ECF No. 27 at 5–6.  And

9    although it is certainly true that Frye's report includes facts not present in plaintiffs' complaint,

10   that is to be expected.  See Fed. R. Civ. P. 8(a) (requiring that a complaint merely include a short

11   and plain statement showing that the plaintiff is entitled to relief).

12        Defendant also does not argue convincingly that plaintiffs' discovery communications

13   indicated an intention to challenge Arreola's claim based only on whether he was injured within

14   the scope of his employment.  Again, defendant's citations to plaintiffs' answers to interrogatories

15   and deposition of person most knowledgeable do not actually bolster its argument.  See ECF No.

16   27 at 5–7.  According to the discovery that defendant cites, plaintiffs have continually asserted

17   that defendant should have denied Arreola's claim.  Id.  Defendant seems to have interpreted

18   these statements as assertions that defendant should have denied the entirety of Arreola's claim

19   from the outset because the claimed accident never occurred.  However, there is simply no

20   indication in the discovery provided by defendant that plaintiffs ever claimed such a thing.  The

21   version of events described in Frye's report is, in fact, entirely compatible with plaintiffs'

22   complaint.

23   3.    Exclusion

24        The court will not disqualify Frye as plaintiffs' only expert witness in light of the limited

25   prejudice suffered by defendant.  Exclusion is a harsh remedy.  Imposition of this sanction

26   because of discovery violations is generally improper absent undue prejudice to the opposing

27   side.  Amersham Pharmacia Biotech Inc., v. Perkin, 190 F.R.D. 644, 648–49 (N.D. Cal. 2000).

28   As explained above, the prejudice to defendant as a result of plaintiffs' actions seems to be mild.

In addition, plaintiffs' reliance on this expert is a crucial element of their case. Plaintiffs have designated Frye as their only expert regarding defendant's handling of Arreola's worker's compensation claim. ECF No. 26 at 7. The question of whether defendant violated its duty in the handling of Arreola's claim is at the heart of this matter. Given the importance of this expert testimony to plaintiffs' case, it is appropriate to fashion a remedy that will minimize the prejudice to defendant without excluding Frye as an expert witness entirely. Accordingly, the court will permit defendant to re-depose any witness it has to in light of the expert report, and plaintiffs' counsel shall pay all costs for the depositions. Fed. R. Civ. P. Rule 37(b).[2]

4.   Scheduling Order

Defendant argues that even if Rule 26 does not require Frye to be disqualified, the court's scheduling order does. ECF No. 27 at 8. The undersigned disagrees. While the court's order does serve as a stern warning, it does not require the disqualification of expert witnesses as punishment for the untimely filing of an expert report. See ECF No. 12 at 3 (noting that a failure to comply with the scheduling order will, "in all likelihood," result in that expert's disqualification). Moreover, as discussed above, the prejudice suffered by defendant in this case has been minimal. Accordingly, the court will not disqualify Frye as plaintiffs' only expert witness because of plaintiffs' failure to comply with the court's scheduling order. However, in

---

[2] At the court's February 18, 2015, hearing defendant pointed to a number of cases similar to this one where experts were disqualified for submitting untimely reports. These cases included Smith v. Nat'l City Mortgage, No. 2:10-CV-0359-JAM-JFM, 2012 WL 2934869, at *2 (E.D. Cal. July 18, 2012); Stamas v. Cnty. of Madera, No. 1:09-CV-00753 LJO, 2011 WL 826330, at *8 (E.D. Cal. Mar. 3, 2011); and Churchill v. United States, No. 1:09-CV-01846 LJO, 2011 WL 444849, at *4–9 (E.D. Cal. Feb. 8, 2011). The court finds all of these cases distinguishable from this one, primarily because of the justifications offered for failing to timely disclose expert reports. The plaintiff in Stamas offered no explanation for the untimeliness of his expert report, 2011 WL 826330, at *8; while the plaintiff in Smith simply claimed he had confused the court's deadlines with those in state court, 2012 WL 2934869, at *2. The plaintiff in Churchill argued that he needed more time to modify the expert report in light of new facts revealed by a recent deposition, despite the fact that the Federal Rules contemplate such situations through the updating of expert reports. 2011 WL 444849, at *4–9. In contrast, plaintiffs here allege that the deadline for the submission of expert reports caught them by surprise due to a computer error that persisted after assurances that it had been corrected. ECF No. 26 at 6–8. While the court does not find plaintiffs' explanation substantially justifies their actions, it does distinguish their actions from the plaintiffs in these cases by refuting any implication that they may have willingly failed to comply with the court's scheduling order.

accordance with Federal Rule 37(b)(2)(C), the court will order plaintiffs' attorney to pay defendant's reasonable attorneys' fees necessitated by counsel's failure to follow the court's scheduling order.

## CONCLUSION

In accordance with the foregoing, THE COURT HEREBY ORDERS that:

1. Defendant's motion for sanctions (ECF No. 19) is GRANTED IN PART as follows:

   a. Plaintiffs' counsel shall pay all costs, including reasonable attorney's fees, incurred because of his failure to provide a timely expert report.  The parties shall file, within seven days of the close of discovery, a stipulation regarding the fees owed by plaintiffs' counsel in accordance with this order.  In the absence of a stipulation, defendant may file an appropriate motion.

2. The Status (Pretrial Scheduling) Order filed January 9, 2014 (ECF No. 12) is AMENDED as follows:[3]

   a. Discovery is reopened for the limited purpose of any additional depositions made necessary by the late-disclosed expert report.  All discovery shall be completed by April 24, 2015.

   b. All dispositive motions shall be filed by June 17, 2015, with hearings scheduled no later than July 15, 2015, at 9:30 a.m.

   c. The final pretrial conference is set before District Judge John A. Mendez on August 28, 2015, at 10:00 a.m. in Courtroom No. 6.  Pretrial statements shall be filed in accordance with the requirements set forth in Judge Mendez's scheduling order, ECF No. 12.

////

////

---

[3] Any future requests to modify the scheduling order should be directed to the district judge.

        d.    A jury trial is set to commence before Judge Mendez on October 5, 2015, at 9:00 a.m. in Courtroom No. 6.

DATED: February 27, 2015

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE